The next case this morning is 22-1228 Rene Sevelitte v. Guardian Life Insurance Company of America. Attorney Fitzgerald, could you please introduce yourself to the court and test your microphone? Good morning to the Honorable Court. My name is W. Kevin Fitzgerald. I am the attorney for Rene Sevelitte, the plaintiff appellant. Thank you. Attorney Garrick, please introduce yourself and test your microphone and video. Good morning, Attorney Joshua Garrick. Can you hear me? Yes, but we don't have video. I have video. Okay, that's good. Attorney Collins, please. Good morning, Your Honors. Chris Collins on behalf of Guardian Life Insurance Company. Thank you, Counsel. Attorney Garrick and Collins, please mute your audio and video. The next case is Rene Sevelitte v. Guardian Life Insurance Company, appeal number 22-1228. Attorney Fitzgerald, please introduce yourself for the record and proceed with your argument. Good morning to the Honorable Court. My name is W. Kevin Fitzgerald. I am the attorney for Rene Sevelitte, the plaintiff appellant. And if it pleases the Court, I would like to withhold two minutes for rebuttal. You may. Thank you, Your Honor. This case is actually quite simple. It's regarding Massachusetts General Law 190B. The law is a Uniform Probate Code statute that has been enacted in many states. Counsel, you don't have a lot of time. We do know the statute. We know there are three exceptions to the automatic revocation of the benefits. It appears to me that the District Court made a mistake in thinking that the governing instrument, the instrument which originated the benefit to your client, the insurance policy, the District Court instead thought the divorce agreement was the operating. So let's just assume that's wrong. So then the District Court would look at the third exception, if it had properly looked at it, and looking at the exception for contracts entered into by the parties at the time of the divorce, there was such an agreement here. Paragraph 6 of the agreement is the basis for your claim that the benefits continued. The District Court kind of got the analysis screwed up. But tell us why you think that is adequate to let your case survive. Thank you, Your Honor. To answer your question, the property settlement agreement in stating that the whole life insurance policy, that's the description in paragraph 6 of Section G, is adequate to describe this is several fold. One, it is the only whole life policy ever purchased by the couple during their marriage. Secondly, the term the whole life policy was a shorthand that the couple knew for purposes of differentiating it between the other life insurance policy that they had purchased together, which they referred to as the mortgage policy. And that was a term life insurance policy. The contract was between married couple. The language in the contract was designed to be simple, clear language that the couple could understand. It was accepted by the Essex County Probate Court. It was part of their order of divorce. They include the property settlement agreement. So this is not just as a matter of inclusion as an exemption in the property settlement agreement. It is also as part of the court order of divorce that was filed in the Essex County Probate Court. Counsel, your case comes down to the proposition that the language that the parties agree to maintain the life insurance policy in full force and effect is equivalent to an express designation that the beneficiary won't be changed or that your client will remain the beneficiary. There's no Massachusetts case law that says that in so many words. But you said this is a statute that is not uncommon among the states. If there's any case law anywhere that you're aware of that says that words like maintain the insurance policy in full force and effect should be accorded effect as an express designation under the statute. Justice Selye, that language full force and effect is used by the Commonwealth of Massachusetts in its standard form no fault divorce agreement which was also part of the evidence submitted by Guardian in their case. That language having been adopted by the Commonwealth of Massachusetts itself for its no fault divorce agreements would say that it is appropriate in this case to be used to indicate that no changes may occur. It is a common legal phrase to be used that no changes in a contract can occur until a subsequent contract is enacted. In this case there was no subsequent contract and therefore the terms of the insurance policy and the contract for divorce property settlement agreement must be kept in full force and effect together as they relate to this matter. I understand your argument, but my question was are you aware of any case law? No, I'm not aware. I'm not aware of any other cases on that point. Okay, I had understood you to argue that the combination of how Massachusetts views that terminology and the language suffices to show at least at this stage that you've got a claim here for the benefits. At this point if there is some question about what the language concerns I suppose if the case goes back then there could be evidence about it or further development of custom and practice in Massachusetts. But you've gone beyond that. You have sued Guardian, which after all is simply the insurer here, on a claim that they acted, you put it in violation of 93A, it's actually 176D, which is the 93A for insurance companies. And the insurance company responds, no, we didn't violate 176D. All we did was deny a claim because we didn't think it was clear and we left it up to the court and we interpleaded this. And they've said, in essence, let us out of the case now. If there is a remaining issue to be resolved that doesn't involve us, we've interpleaded. The court can decide the question. So what's the basis for a claim that the insurance company has intentionally acted in bad faith, which is something that you pled? Your Honor, they directly sought out the estate and approached the estate to file a claim. Time. Go ahead and answer. They sought out the estate, asked the estate specifically to file a claim for the proceeds, had specifically denied my client that they would pay her, and this is no different than the Siegel v. Berkshire case. And Berkshire, in fact, is the same insurance company as Guardian. So they are well aware of the nature of the 93A claim, which was the whole premise of the Berkshire case. I'd also like to say, if I might, that the reference in the property settlement agreement is only there for the purpose of meeting the revocation on divorce matter. Interesting. Okay. I'm sorry. I haven't read Siegel v. Berkshire, but I don't see how a denial of a claim and an effort to get all of the potential claimants before the court is bad faith or unfair. In Siegel v. Berkshire, which again, Berkshire is the actual underwriting company of this specific policy In that case, the insured assigned a beneficial interest in a contract to another party. The actual beneficiary sued when Berkshire made payment to the assigned party. Berkshire had never received a notice of a replacement of beneficial interest. The beneficiary, Mrs. Siegel, was still the beneficiary of the policy as listed with Berkshire. The fact that they reached out and found this party with a contract of assignment of beneficial interest was deemed to be a violation of 93A. That wasn't under the statute we're being asked to apply here, correct? Correct, but an assignment made by contract and the theoretical termination of beneficial interest operate in the same manner. They're both designed to replace the named beneficiary. In this particular case, in the Soveletti case, the fact that the policy is in the property settlement agreement indicates the whole purpose of it being there is to be an exception. I understand the argument. Thank you. Thank you, Your Honor. Thank you, Counsel. Attorney Fitzgerald, please mute your audio and video. Attorney Garrick, please unmute your video and audio. Good morning and may it please the Court. Joshua Garrick on behalf of Robin Keppla Soveletti, the personal representative of the estate. I think I'd like to start by answering the question that Judge Selya posed here, which is, is there any case law whatsoever to accept this position that's been furthered by Rene in this case? If there is, we haven't seen any. We've certainly looked, and I understand that Attorney Fitzgerald has also been unable to find any case law in that regard. This is the first that anybody has furthered that argument. But the Court doesn't need to get to that point because the Supreme Judicial Court has actually put its finger on the question that's before the Court, and not only have they opined what is necessary, but the district court below actually cited that in its decision. Under the Parker v. Aflac case, in order for the language in a divorce agreement to be sufficient to have an exclusion from the revocation on divorce provision, it must expressly provide that the beneficiary designation is not revoked by divorce or words to that effect. That hasn't occurred. But counsel, words to that effect. What other purpose would the provision that we agree to keep the policy in full force and effect, what other purpose would that serve from the point of view of the divorcing parties? Yes. I'm sorry, I interrupted. Go ahead. In matrimonial law, life insurance policies have two purposes. You either have them to secure some sort of alimony like child support or alimony, or in a situation where there's a whole life policy, it actually has an asset value that's subject to equitable division under matrimony. But the asset value of the life insurance policy was taken care of in a separate sentence. Correct. I think that's the clear import of paragraph 6. What paragraph 6 on Exhibit G is saying is there is this asset value. We're going to maintain that asset value, and if it's sold, and again, it would be pennies on the dollar. It wouldn't be the $75,000 in debt benefits. It might be worth $5,000 or $10,000. But if it's sold at that point, then the wife is entitled to half. But the language is actually very important because here it's saying just keep the policy in effect, of course, giving the husband the option if he wants to sell it, whereas the other two instances that are included in the divorce agreement that expressly talk about having a beneficiary designation. There's the child support obligation, which expressly states that the beneficiary is not Rene, but Rene is trustee for the son, Joseph M. And then in the modification agreement, the parties again agreed that the husband would take out the American fruit policy to secure payment of alimony, and in that instance, the parties expressly identified Rene as being the beneficiary in that account. These parties were represented by sophisticated and well-regarded divorce attorneys, and they knew that they had to put that language in there if there was going to be that beneficiary designation. Can I, please? Sorry. Please. Okay. As Judge Selya says, the SJC used the phrase or words to that effect, and the statute says a contract exception provides that the divorcing spouses can retain beneficiary designations by contract relating to the division of the marital estate. So, at least under the contract and or language to that effect, the way I read paragraph six is likely the intention was not to revoke. You seem to be saying that we should, as a matter of law, kind of ignore the fact that the district court analyzed the wrong thing. Let's just put that aside. But as a matter of law, we should declare that this language plainly does not meet the standard. What is the law in Massachusetts as to whether this, like any other contract, if there is ambiguity, then it is subject to evidence about the intention of the parties? Is there some exception here under this statute to normal contract rules? The only answer that I would have to that, Your Honor, is that the statute says that it has to be expressly provided for, as does the Affleck case. So, if there is no express recognition of this ongoing right, then you can't go ahead and test it. But their argument is that it is a recognition of the ongoing right. What I'm asking you is, is this purely a matter of law to be decided by a court or, like other contracts, if it appears to be express, is there a possibility of taking evidence to find out? I think the answer to that is that this is something that can be decided purely as a matter of law. Not can be. Must be. It must be because the standard is an express statement, not an implied statement that can be inferred through the intention of the parties. Here, there is no express indication whatsoever. In order for Renee to get the benefit of this exclusion, she's got to point to some express provision, not to some intention that may have happened at the time. You say it is not express because it doesn't use the language used in two other provisions of the agreement having to do with the child and purchase of another insurance policy to secure payment of alimony. It doesn't mention the word beneficiary at all. It just says you have to keep the insurance in place or you can sell it if your buyer can pay out half. It doesn't say anything about the beneficiary. If he were to change the beneficiary post-divorce, assuming that he was supposed to keep it this way, he could not be held in contempt of court because it doesn't say that she's required to be the beneficiary. There's just no expression whatsoever in this provision. Yes, I agree that the other provisions do expressly state that, and so those would get exception to the revocation on divorce provisions. Okay, so you're making two different categories of arguments. Okay. Thank you. Thank you. Attorney Carrick, please mute your audio and video. Attorney Collins? Good morning, Your Honors. Chris Collins on behalf of Appellee Guardian Life Insurance Company of America. This is a simple interpleader matter that has been unnecessarily complicated. I think what is of great importance from Guardian's perspective is that after due deliberation, the district court awarded the benefits to the estate of Joseph Cevalletti, which did two things. One, it proved that the estate's claims were far from frivolous. Okay, I'm going to stop you right there. Suppose we disagree, okay? Suppose we disagree, and then what position does that leave you in? Even if you disagree with us, we never said who should get these benefits or made a claim that they were the benefits of the estate or the benefits of Renee. What I'm saying is the interpleader was certainly justified by filing it, by depositing all of the benefits into the court's registry, and allowing the court to make the decision after analyzing the arguments of both of those parties as to who should receive the benefits. The interpleader itself was justified. Guardian is a disinterested stakeholder into who should receive these benefits. There are no more benefits to be paid because they were all deposited with the court, and the court distributed them based on their order. So there are no more benefits left to distribute. There was never a breach of contract because the policy benefits were never denied to anyone. Are you saying the case is moot because the benefits have been distributed? What I'm saying is that it proves the viability of the interpleader. The process played out. When the company sought to deposit the funds of the court, Renee Cervaletti didn't intervene and say, hey, this is a bad faith interpleader. Those benefits belong to me. She acceded to that deposit with the court to allow the court to make the ultimate decision as to who should get these benefits. It's a little bit late now to say, well, I'll wait to see if the court gives them to me. And if they don't, I'll claim this was done in bad faith or at least perpetuate that argument that I originally made. They should have, at the time that we made that deposit, said, don't make this deposit. This is a bad faith interpleader. I don't want to compete for these benefits. These benefits are mine. And she didn't do that. She allowed the court to proceed with its hearings to determine who should receive these benefits. And here it is so clear. Bottom line, Mr. Collins, what you're saying is we've done our job. We had the possibility of conflicting claims. We deposited the money with the court. Let us go home. I'm not saying the action is moot or anything else. You just want the dismissal as to guardian to be affirmed. Exactly. We're a disinterested stakeholder in those benefits. And I will say, while the court may have used the term governing instrument incorrectly, the analysis that the court went through was with respect to the agreement of divorce. And even though they might have labeled it as the governing instrument against the definition in the statute, the analysis was spot on. And I think it's very difficult. If you're disinterested, why are you taking a position on this? Well, I will say, Ron Hur, that I'm just saying that I think that the decision was clear as to what the court was saying with respect to that. And you're right. We don't have a position. They're not. Our job here as an insurance company is complete. We deposited that money with the court. We sought to get out of the case. And Renee Civelletti wanted to perpetuate this breach of contract and Chapter 93A argument against us. There was no breach of contract because the claim was never denied. The benefits were paid in full with interest. And with respect to Chapter 93A, as the court pointed out, it's a prescriptive statute. 176D has a laundry list of what you have to allege to show damages under 93A. They haven't even come close to doing that. Their only argument that we violated 93A was that we sought out the estate to understand whether they were going to make a claim to these benefits. And they said, yes, we are. And if that's a violation of Chapter 93A, then every interpreter has. Got it. Got it. Thank you. Thank you. Thank you, Attorney Collins. Please mute your audio and video. Attorney Fitzgerald, you have two minutes for rebuttal. I will try and be very quick here, Your Honors. Both Acacia Mutual Life v. Feinberg and Metropolitan Life v. Garin go to the point that even when money has been deposited with the court, that the timeframe of breach of contract occurs at the death of the insured and the beneficiary not being paid. And that is true here. The concept that they hadn't made a determination not to pay Renee Civelletti is false because she received emails that they weren't going to pay her. And as a result, I filed the litigation. Okay. Mr. Fitzgerald, can you go back to the argument made, not by Guardian, but by the widow, that this is insufficiently expressed? And then tell us your view of whether this is a pure issue of law for the court or whether the usual contract law about ambiguity allowing introduction of evidence applies.  Mr. Garrick said that the only purpose for life insurance is to either guarantee child support or alimony. That's not the case. This is a property right. It's an asset that was given to Renee Civelletti as part of the divorce agreement. The language is very clear. It's described as a whole life policy. It has to be kept in full force and effect. If it's kept in full force and effect, she remains the beneficiary. That is standard contract terms. So, I do believe that this is a matter of law. The issue is to whether or not the description of the whole life policy is adequate or expressed under Parker v. Parker. Continue. In Affleck v. Parker, there was no insurance policy in the divorce agreement listed. There was one, but it wasn't part of the divorce agreement. It clearly is. And the only purpose to have a reference to it at all is to create the exemption under 190B. Otherwise, it's very clear that she wouldn't be the beneficiary. You sort of skirted my question to you about whether under Massachusetts law, regarding this statute and the exceptions to it, there can ever be a case where the court thinks there is some ambiguity as to whether it expresses a clear intent and you can take evidence or whether it is always a matter of law. Your Honor, at this point in time, there are only two cases decided under this part of 190B. The Affleck v. Parker case, which the facts are not applicable to this case at all. Because, though there was an insurance policy, it was never made part of the divorce agreement and everyone agreed to that. The other case is Thrivant Financial v. Lutheran v. Wartness. It is a decision by the Eastern District Federal Court in Wisconsin applying 190B to a Massachusetts divorce agreement and an insurance policy purchased in Massachusetts prior to divorce. In that case, there was a reference to the insurance policy, just as there is here. The specificity of it was more described than it is in this case. The shorthand between the parties in this case was adequate in my mind, but I will say that in Thrivant, there were more descriptive terms. In that case, the court was very clear. It's in there, that's an exemption, it's fine. I think the same theory of law applies here. The policy was adequately described between the parties to the contract and was affirmed by a Massachusetts probate court. It was made part of the court order for divorce, and therefore the court deemed that the description was adequate at that time to be clear of 190B, which had already been enacted. The judge in reviewing this property settlement agreement clearly felt that it was adequately addressed to meet the exemption and didn't send the parties back to rewrite that paragraph. He understood what it meant and made it part of the divorce decree. Is there any clear law in Massachusetts? We have one case that goes one way, one case that has facts that don't even bear on this matter. The closest is Thrivant, and in that case, the court affirmed that the policy went to the beneficiary listed in the policy. Okay, thank you. Thank you very much, Your Honor. Thank you. Your Honor, that concludes our argument in this case. Attorney Fitzgerald, Garrick, and Collins should disconnect from the meeting at this time. Thank you.